My name is Kelly Corr, and I represent Dr. Deshmukh. And I would like to reserve five minutes for reply, if I might. Before I begin, with the Court's permission, I'd like to hand out to counsel and the Court's bailiff three charts for illustrative purposes only that I'd like to refer to in argument. Is that permissible? Have you shown them to your opponent? I have a copy for him here. One's a chronology of events, Your Honor, that show sites to the record. The other one shows specific contacts in California with sites to the record. And the last one is just a quote from the Spiker staging case. Well, show them to your opponents, if they agree.  I cannot decisively suggest the accuracy of these, but for illustrative purposes, I'll work on the charges from my table, so I'm happy to use them for illustrative purposes. Thank you. There are three issues of law in this case, any one of which, if the Court rules in our favor, is dispositive and would require dissolution of this injunction and dismissal of the appeal.   The first one involves whether there is or is not jurisdiction in this case. The second one is what is the proper choice of law, whether California or Washington law would govern this case. The third issue of law is whether or not, even if Washington law were to govern this case, whether the Washington Supreme Court would adopt and follow the inevitable disclosure doctrine. If time permits, I have some other issues, such as whether the requirements of the inevitable disclosure doctrine were met. But essentially, I'd like to focus initially on jurisdiction. If you refer to the handout with sites to the record, you will see that Dr. Deshmukh, as the appellee frequently reports, vacillated for a few days about which job offer to accept. Each job offer required him to live and work in California. On July 13th, 10 days before this case was filed, he finally made his decision. He quit LAM and he went to work for Applied. Applied required him to relocate to California. On July 14th, he immediately started working for Applied. The record is clear, as Dr. Deshmukh's affidavit shows, that he immediately put up his house for sale and he took his family down to California for a house hunting trip. Ten days later, as I say, they filed a lawsuit. As we know, the ---- And where is Dr. Deshmukh at the time the lawsuit is filed? He's living and working in California. How is he living? What's his living situation? I believe it was an apartment at that time. He was house hunting. He brought his family down to look and buy for a house. He had put his house for sale in Washington. He hadn't yet sold his house in Washington. You might recall there was a picture where the process server goes by and he does his posting process serving. You can see a key box on the lock of the door there. But I'm interested. We're talking diversity jurisdiction, right? I'm sorry? We're talking diversity jurisdiction. Yes, that was the only basis for jurisdiction below. You're talking about when was the domicile in California established. Exactly. And what had he done to establish domicile in California at the time of the filing of the lawsuit? He had been living and working in California for ten days, and that was where he permanently intended to reside. His citizenship and his domicile changed, we would submit, on July 13th when he quit LAM and said, I'm working for Applied, and Applied is requiring me to live in Sunnyvale. At what point is he physically present in California? He's physically present there July 14th. He's actually working at Applied that day. That's ten days before the case was filed, and as the court well knows, you can instantaneously change your domicile or your citizenship. The issue is where's the physical presence and is your intention to remain indefinitely? Well, this was not some part-time temporary job he had taken at Applied. It was a permanent job, indeed. He's obviously still there, and that's the issue why we're here. If you look at the process serving, it's interesting, too. There is an affidavit in the record from counsel for LAM when the case was first filed saying every day we had the process server going by his house, but nobody was ever there. That supports our position that he was living and working in California. At what point does his family join him in California? That's after the suit is filed, Your Honor. He then sold his house in Washington and bought a house in California. Those two facts are after the- Do we have anything else that would support his domicile in California, opening a bank account, registering to vote, obtaining a driver's license? I think the record is silent on those issues. I believe there would be substantial evidence. But, you know, the fact is LAM has the burden on this issue. They have to prove jurisdiction. Based on the record before you, I think it's incontrovertible that he had changed his domicile. He was living and working in California with an intent to remain there. If that is true, that is the end of this case. Why did he answer in his answer to the first complaint that he was still domiciled in Vancouver? I don't know, Your Honor. That was prior counsel. As you know, that complaint was eventually dismissed. A second complaint was filed, and the diversity of jurisdiction was not admitted. Be that as it may, as the court knows, I'm sure, you cannot waive a jurisdiction issue, and it can be raised at any time. Of course, that's right. But the trouble with that is that if we're talking domicile, a fair amount of it has to do with intent. I think the proof of the pudding is he's living and working in California for 10 days before the suit's filed. His house is put up for sale. His family goes down there on house hunting trips, both his wife and his kids, and those facts are uncontested in the record. And so I think if you look at the evidence as a whole, it's clear that there is no subject matter jurisdiction at the time the case is filed 10 days later. I'd like to turn briefly, if I could, to the choice of law issue. This, again, I think is a de novo issue. Both we and my opponents cited the Ninth Circuit Sparling case. A federal case sitting in Washington addressing this issue obviously looks to Washington's choice of law. That's the spider staging case. If you look at the spider staging factors, which I actually don't have my quote in front of me, I'm sorry, you can see that the factors, if you go down them one by one, it seems to me it's inarguable that the first three would show California as a principal focus and perhaps the fourth might show Washington. I'd like to just address a couple of quick facts, though, about choice of law. When Mr. Dr. Dershowitz was first hired, if you look actually at the record, you'll see that his first job offer was actually in California with LAM. And that's ER 265-6. And he then reports for his orientation in California where there's a number of documents he's asked to sign, one of which is the first confidentiality document. He is then, it's uncontested, given a disemployment agreement. Now, as we know, there's an issue about did he return it. The testimony in the record below is that he did sign it. That's what he testified to at the preliminary injunction hearing. And that had a California choice of law provision. In addition, the standard form of agreement, which eventually LAM produced after the judge had ruled that Washington law would apply, shows that that standard form also has California law as a choice of law between these parties. So from the beginning of his employment, it shows that LAM's intent, and I believe his intent was that California law would govern this case. Coming to the punchline for a moment, if California law governs this case, there's no inevitable disclosure. That's their only claim here. Again, the injunction must be dissolved and the case must be dismissed. What's interesting is they say, well, he lived and worked in Washington. And there is some truth to that, I admit. However, they supplied an interesting declaration, and I can find the site if necessary, where somebody from LAM totaled up all his trips to California and where he went elsewhere. Well, if you add that up, you'll see that in 2004, I think more than a third of his time, I think it was 21 or so trips, were from Portland, the airport right across from Vancouver, Washington where his house was, down to San Jose where LAM's headquarters are in Fremont. And fully, if you add up the days, I think it's 66 days. So as he said in one of his declarations, three and a half days of the week, he was usually working in California. Then it's interesting if you fast forward to the end of the relationship, LAM again says California law applies. And frankly, I think they should be stopped from what in essence is forum shopping here, trying to get Washington law to apply. They say, here's this termination agreement we want you to sign, which he does sign in California on July 20th, which again suggests that California law would govern because it talks about the employment agreement. Then the director of legal relations a few days later sends Dr. Deshbouk a letter reminding him of his obligations under California civil law and California penal law. Now if they believe Washington law should govern or always did govern, why are they telling him we're reminding you that California law governs our relationship? So if you look at all the substantial factors here, and not just pick, well, his house was in Vancouver, Washington, an isolated point, or he was served in Washington, which by the way, is not a factor under any of the tests I've seen where you're actually served. I mean, he could have been on a plane flying over Washington for that matter. But the reality is the most substantial factors here, which is an issue of law to de novo review for this court, is clearly California. Now. Let me ask you one question. Yes, Your Honor. What's the status now? Is the job still available in California? He is currently still working for Applied Materials. He's in a low-level job. He is essentially parked in a corner. He has missed many, many bonuses. He's missed two promotions. Frankly, this injunction is a huge stigma for him. He's a native Indian, and his friends and family in India view this as a stigma. I want to know. It's still a practical problem. Yes. It's a huge problem for him. It's my understanding that if this injunction were dissolved today, he could go back to working in his chosen field, which he had done, by the way, before LAM, which is working in dielectric etch and in particular this sort of subcategory called dual damascene. Touching briefly on Washington for a moment, where the courts would say, no, we don't agree with you, we're going to say Washington law applies. That issue has never been squarely presented to the Washington Supreme Court. However, what we do know is that for the last 20 years or so, we have not found, and counsel for LAM has apparently not found, a single new state adopting the doctrine of inevitable disclosure. To the contrary, there's been about five or six states that we cite in our brief where that's been a new issue. They've all rejected it. Now, Washington, what would it do? The most recent opinion that we have found from Washington is this, I'm not sure I'm pronouncing it right, Lambrioli case. It was decided by the state Supreme Court late last year, 9-0 opinion. And the issue there was on a covenant not to compete. For years I think there's been cases going both ways about if you hire somebody and then later require them to sign a covenant not to compete, is there valid consideration for that? Some courts say continued employment is enough. Others say, no, you have to give them a promotion or additional salary or something in the way of consideration. The Washington court adopted the idea that employee mobility here is the key because they rejected the doctrine that just continued employment was adequate consideration for a covenant not to compete once you've already been hired. So I think that is very telling about what a Washington court would do. And if a Washington court would reject inevitable disclosure, then once again this case has to be dismissed and the injunction dissolved. Even if the court in Washington were to adopt the inevitable disclosure, there's a couple of points. One, if you go back to the PepsiCo case, which is I think the seminal case in this area, you'll find that there was a lack of candor, and that was the key issue or one of the key issues at least for the district court's decision. As you recall in that case, the employee lied before he left about where he was going, what his new job was, what his responsibilities, and then the court concluded he also lied after the fact. I'm sorry. Did you say you wanted to save five minutes for rebuttal or not? Yes. Do I have five minutes now? Yes. Okay. I'll save my time then. Thank you, Your Honor. And thanks for reminding me. Good morning, Your Honors. Good morning. I am Christopher Howard here on behalf of LAM Research, the appellee in this matter. The standard of review for an appeal from a preliminary injunction is one of mixed fact and law where when it comes to factual questions, there should be deference to the trial court's factual determinations. This is important because for many of the arguments that the appellant has just asserted, they assert their version of the facts and then seek to have this court make a legal determination based upon disputed facts that were weighed and resolved by the trial judge before below for the purposes, at least, of the preliminary injunction. Now, with respect to standard of review, as long as I'm starting on that point, I do have two sites that were not in our brief that were provided to counsel earlier this morning because they fill a gap that in reviewing this case was evident with respect to the appropriate standard of review. That gap is ñ and by the way, we agree with the Sparling case. The Sparling case cited by both of us is that the court would start as a legal matter and follow the law of Washington, spider staging, for the legal determination. But after that, the court must then look at facts and the two additional cases, and this is fairly basic law, the Shannon Vale 5 v. Dell Bunch, 270 Fed 3rd, 1207, which points out that after the purely legal question of selecting the correct choice of law rule, you then apply the rule to the facts of the case, which is a mixed question of facts and law, and the deferential standard on the factual inquiry is set forth in Tolbert v. Page, 182 Federal 3rd, 677, which would require with respect to factual inquiry a clearly erroneous standard. Can I cut to the chase on one point? Yes, sir. And that is if we follow California law, and I understand there are several steps to get there, but if we get to the point where we say we follow California law, do you lose? I'd like to give you a two-part answer, Your Honor. And the first part of that is certainly the district court felt there was a significant risk of that, and in finding that, which he did in one of his earlier orders on venue, found that to be a reason of compelling importance in the spider staging weighting issues to apply the foreign state law. I do not believe that the inquiry has been done at the trial court level with respect to the facts, because Washington and California have substantially identical trade secret acts. You know, I think it's a simple question. Let me ask it in a different way. If we follow what I think is the California law that does not have an inevitable disclosure rule, do you lose? Your Honor, California has rejected inevitable disclosure, but it has a trade secret act that allows for injunctions for threatened misappropriation. And there has been no factual inquiry under that test, under California interpretation, where this judge has effectively found threatened misappropriation. So I would submit that that test has not been applied. So you have a factual claim that in your view is unresolved, so even if you do not have inevitable disclosure as the doctrine upon which you rely, you nonetheless think you have a trial issue in district court? Yes, Your Honor. Although I believe the trial judge has correctly found that Washington law should be applied to this case. I understand, but my hypothetical said no. Yes. And let me just clarify, Your Honor, that like some of the states like Pennsylvania that went out of its way to avoid the word inevitable but came to the same result. What we're talking about isn't just inevitable disclosure, but threatened misappropriation, where the judge believes, and his order found, that there is threatened misappropriation of key trade secrets that are not disputed. And that same language appears in the California statute. California has rejected the term inevitable disclosure, but it has the same statute Washington has. And threatened misappropriation can be not just we can prevail with a cognizable cause of action, but can be a basis for injunction and the preliminary injunction, which is what is before the court. Specifically, the court below went through a well-reasoned venue balancing, not in the order which has been appealed, but in a prior ruling, the venue, the California law, that has been transferred from the forum State to California and is in the record at pages 50 and 51. And importantly, the court not only found that the weight of the significant context was in Washington, but found that to transfer venue from the forum State to California ran a significant risk of counter of having California law reach a different result than Washington would. The question you asked. And because of that significant risk. How could that possibly be unless the district judge thinks that the California district judges aren't going to get the law right? That is to say, you get a change of venue under 1404, it's a change of courtroom, it's not a change of law. Your Honor, that was a finding he made in his change of venue order, that there was indeed a risk that they would apply California law if transferred to California. Well, that order is not on appeal. Right. I understand that. The point I'm making is. But that part of the reasoning has to be wrong unless he's assuming that he's going to get the law right and that a California district judge applying the same law is going to get the law wrong. Or at least he's recognizing a risk of it, Your Honor. Okay. Yes. And that order is not on appeal, but the judge indeed found in this case the interest of justice, and he specifically made an interest of justice finding, required Washington law. Now, factually, the appellants assert that there must have been a contract, a contract not before the court, and efforts to bring it before the court were denied and those references stricken, because some other people had contracts. But even if there were a contract, the interest of justice under the Sparling case and the application of it, specifically under the Sparling case, the interest of justice is an exception to the application of that contract. So the trial judge's factual weighting of choice of law and the factual weighting of something which the trial judge is entitled to deference would govern even if there were a contract, but there is no contract before this court. Can you tell me where the district court's factual findings as to choice of law are? ER 50 and 51 in the record, which are a portion of a document entitled, Order Denying Defendant's Motion to Transfer Venue, which was an order dated before the order which is on appeal, which is dated August 16th of 2004. Thank you. You're welcome, Your Honor. To address jurisdiction similarly, once again appellants assert certain facts as if they were undisputed, and thereby say that, therefore, it's a question of law for this court. With respect to domicile, there must be a factual inquiry. As appellants acknowledge, this issue was not raised below. So the question of standard review is not technically important. Can I just go back to these? Yes, certainly, Your Honor. Because when we started, we started with your assertion that we had to give deference to the factual findings. I was looking for the factors in Johnson v. Pryor, which I gather you both agree govern the choice of law. These factors on page 50 and 51 having to do with forum nonconvenience don't seem to be the same factors as we're looking at the choice of law. It covers the same factors with respect to deciding the issues with respect to who has most important contacts and the most significant contacts in the case, as well as the local interest in the controversy, part G. It's only 50 to 51. First, hitting on 50 is convenience of witnesses. Second is ease of access to evidence. Third is familiarity of each forum with applicable law. Fourth is local interest in the controversy. And we say the issues are of local concern. Interest of justice. How do those go to place where the injury occurred, place where the conduct causing the injury occurred, domicile of the various parties, and the place where the relationship is centered? He has not addressed all of the issues in the same fashion as spider staging, in part because the issue was not raised before him in a fashion that would force him to do that. Well, that's fine, but I just wanted to see what factual findings are supposed to give deference to with respect to the choice of law issue. And specifically, Your Honor, the contacts he has put in the venue order address enough of those with respect to local interest in the economy and the interest of justice, which are specific elements in the spider staging test. Now, there was not a spider staging-based motion specifically for this judge to rule upon to enumerate those with respect to a choice of law motion to dismiss. At that time, there was, however, an order denying the defendant's motion to dismiss on this case, which also made rulings with respect to the applicable law and the appropriate law. And the reference on the motion to dismiss, I do not have off the top of my head that I will get to before my 10 minutes is up. There have been one of the complications of this is although there's a specific appeal from one order, there are at least four orders where issues are raised and addressed by the trial court that bear directly upon the issues which they now seek to have this court review de novo with the suggestion the trial court did not make any of these inquiries. But the trial court did over the course of several matters in this case. You know, if I look at these factors, and this is a very standard choice of law coming out of the second restatement, the place where the injury occurred, we're talking about the threatened injury. Where's that? Your Honor, to be honest, that's not limited to either Washington or California because both of these are worldwide competitors. And so what you have here is a person who's- But we have two California companies. Is this right? Both are done outside of California. And if he is going to reveal trade secrets, he's going to do it in California? He will reveal trade secrets on the road, including in California and elsewhere. Well, but he's domiciled in California. The company he works for is in California. How can he be revealing them on the road someplace else? By their very own testimony, he spends a significant amount of time in his prior job, and although not before you on the record, traveling is part of his current job with respect to visiting clients. It is on the record in Japan. So these jobs are not limited to work in California. My point is he's not going to be revealing them in Washington. Your Honor, may I address that in a different fashion? The answer is he will physically not be in Washington. But if one were to take the appellant's position in this case, one could defeat Washington law and the protection that an employer in Washington is entitled to always by simply hiring the employee into California and having him move there. But that's not this case. Well, it is your- So what we have here is we have two California companies. He's employed by one, then he's employed by the other for a time he's employed up here. He's now employed in California. The place where the injury occurred we've just gone over. The place where the conduct causing the injury occurred I think we have in a sense also gone over. It could very well take place in California. It could very well take place on the road. You listed Japan as where he's going to be on the road. How likely is it he's going to be on the road in Washington when he actually engages in conduct that might reveal the trade secrets? There's a high likelihood it will happen in Oregon where Intel is located, for example, Your Honor. I asked Washington. Well, and the answer is I do not know if he's taking trips to Washington, but may I posit that there's a different reason why the injury occurs in Washington, because it wasn't just a transient employment in Washington. He was employed out of the Vancouver operation supervising the employees of Vancouver for four years. And so that the injury to the operation for, although LAM is a California domiciled company, it's an injury to their operation in Washington and their employment, their operation of 26 employees in Vancouver. I see. So I understand that argument. It works for you. That is to say that piece of the argument is to the extent that there's injury, it may well adversely affect the employees of the California company who are located in Vancouver, Washington. Yes, and the operations in Washington. And the reason I brought up Oregon is there is a river between the two, but the Intel operation is largely serviced at the Vancouver Washington plant. It's the place not where the injury occurs, but the place where the conduct causing the injury occurred is the second one. The place where the injury occurs is the first, and you say that could be in. The injury could spread to several places, including Washington. The injury will include. It occurs in California, and it could, it will have an effect in California, Japan, Washington, wherever. Okay. The factor that he is now in California, he is now in California. I'm not trying to disabuse you of him now being located in California. Third, the domicile, residence, nationality, place of incorporation, place of business of the parties, obviously the two employers are California corporations. They are both based in California. Yeah, right. But the place of employment, Your Honor, if you follow that rationale, you will always end up. Excuse me. Yes, Your Honor. I'm staying with the factors. Domicile, residence, nationality, place of incorporation, place of business of the parties. It doesn't say place of employment. It says place of business. Domicile, there's a dispute as to whether or not he was domiciled in the State of Washington at the time of the suit's instigation. It's clear that he's now domiciled in California. He is now in 2005 domiciled. That's right. Residence, probably the same answer as a domicile, although it's not always the case. Nationality, it doesn't seem to be much of a factor favoring one or the other. Place of incorporation, do we care? Where do these companies incorporate? Are they incorporated in California? Vladden is a Delaware corporation, I believe. But the principal place of business of the corporations is both California? When you're dealing with multinational companies, I think there is more business in California than in Washington. That is true. Okay. And the place or the relationship, if any, between the parties is centered, seems to be centered now in California. At an earlier time, with respect to the earlier employer, you might be able to argue Washington. Okay. Certainly he was employed in Washington. Okay. And if I may use that to segue at least to the jurisdiction issue, which was not raised at the trial court level, so there was no full inquiry with respect to the jurisdiction issue. There are facts established at the trial court level that meet Lam's burden to establish jurisdiction with an affidavit of service that establishes that he stated that was his residence on the day he was served. He may now say something different, although he admitted that in the answer to the first complaint. He was back there in August signing a declaration, which is in the record, so that there are plenty of facts to support the establishment of jurisdiction for Lam having met its burden. The case law is clear that the presumption is in favor of the established burden until the person who's claiming to have moved comes forth and meets their burden to show that they have moved. The most closely controlling case is the Carter case, where someone attempted to sue someone who had been in California, moved to Colorado, intended to leave Colorado, spent intervening weeks in Nevada, spent time house hunting in California with the intent to stay in California, and in the Carter case they concluded he was not yet transferred to a domicile residence because he did not have the first step, the new residence in California, even though he had the intent to stay. And the Carter case said he had been alleged to be a Nevada resident. They said no, he never intended to stay in Nevada. He was still a Colorado resident until he had both the new residence and the intent to stay there. The Colorado residence was still his domicile for the purposes of diversity jurisdiction. Now, to the extent that they contend that there are different facts, yes, they can raise jurisdiction at any time, but this has never been submitted to a fact-finding court to balance those facts. There are sufficient facts on the record to establish jurisdiction, as was done in this case. With respect to, now, if I can come back to both the California issue and the inevitable disclosure issue. The court below has looked at the Uniform Trade Secrets Act of Washington and looked at the facts of this case where there is no dispute that there are trade secrets known by Dr. Deshmukh, that there was conduct by Dr. Deshmukh and his new employer at first saying, no, I can't work on the enabler, the competing product. And then when the court initially ruled that there was no stated cause of action dismissed without prejudice, suddenly there was a change, and suddenly he's working directly on the enabler with exactly what he said he could not do. So a suspicious course of conduct, as found by the court in the order granting preliminary injunction, disturbing the court that there was this course of conduct. And given the testimony of Dr. Graves and of the other individuals of 13 declarations before the court about the exact technical nature of the material, the trial court found threatened disclosure. It also found it would be inevitable that he would disclose, but found threatened disclosure, which is an act which can be dealt with by preliminary injunction under either California or Washington's Uniform Trade Secret Act. To the extent that they are, they, Dr. Deshmukh, is seeking to have this court make a decision about the choice of law, there has still not been a showing that although California rejected the term inevitable disclosure, that California's Uniform Trade Secret Act would not support the preliminary injunction that was appropriately granted by this district court after weighing the factors, after weighing the risks to the parties, and after weighing the cognizable cause of action, what was termed serious questions on the merits of the case. Do you make any argument in your brief that this injunction can be sustained under the law? Neither party agrees that below, Your Honor. The inquiry So if we conclude that the Washington law does not, I mean, if we conclude that California law applies, then this injunction would have to be overturned, since it's based on inapplicable law. Your Honor, I believe that what the court could do under those circumstances appropriately be return it to the trial court for further findings. But we'd have to vacate the injunction, wouldn't we? The injunction is based on Washington law, and if we find Washington law inapplicable and there's no argument in your brief that it can be sustained on California law, then how can we do anything other than vacate? If I may continue, Your Honor. Yes. Your Honor, there is in the brief a statement that California's Uniform Trade Secret Act is identical to Washington and contains the same language. That authority has been brought to the court's attention. The trial court's findings with respect to threatened misappropriation of trade secrets are on the record. They would not be necessary or under the case with the substantial risk to the party, to the plaintiff shown and found by the trial court to vacate pending a direction to the trial court to, and I'll submit this in two parts and then I'll be done with your question, to either follow California law or to make the further inquiry under spider staging that you might find has not been yet brought to this court's full development to make the determination of California versus Washington law. It would not be necessary to vacate the appropriately issued preliminary injunction in that context, Your Honor. Thank you for the question. Thank you, sir. I'd like to pick up just with a point that counsel made. I'm not sure he's familiar with the record. He said it wasn't argued below about a transfer to California would basically void their case. If you look at ER 51, the court specifically says, Lamb Research argues the motion to transfer would result in substantial prejudice to it because it's tantamount to a motion to dismiss given California's stated public policy. Let me just respond to a couple other points he made. The Carter case. The Carter case has nothing to do with our fact pattern.  person for six months, plus he had not started to reside yet in California. On the Washington issue, would there be any disclosure? There is nothing in the record I submit before you that says there's a single customer with a facility here in Washington, so there wouldn't be any disclosure or use in Washington. These are issues of law. You know, the Sparling case. We review the district's choice of law de novo. The case that counsel brought to your attention this morning, Shannon Vale, since the relevant facts are largely undisputed, we are making primarily legal determinations. De novo review is thus appropriate. There is no real dispute on the facts here. Let's take jurisdiction just quickly. Ten days before they filed suit, he quit LAM. He started to work for Applied in California. He had his family come down, look for a house. He put his house up for sale. He had changed his citizenship. He had changed his domicile. Counsel, his intent was to remain. You've got some good circumstantial facts that would support a claim that he was physically present in California with the intent to remain there on or before July 23rd when the lawsuit is initiated. Unfortunately, your client has denied that he had such intent by admitting in his answer that he was domiciled in Washington. And when he admits that, now, you're swimming uphill because you've got some facts that favor you. It's a close case. And you could understand a situation in which somebody could say, no, I'm still sort of trying this out. I'm still starting to see how it feels. And, therefore, I haven't left Washington. I, therefore, want to be a Washington resident on July 23rd. On the other hand, you could also see a situation when somebody would say, I'm a California resident. But your client has admitted that he's a Washington resident. So what do we do with that? You ignore it because in the subsequent complaint, the complaint that's at issue in this case, he denied that very fact. Well, it's convenient that he may be more informed as to the legal consequences at that point. But on his first pass at this, he admitted that he was a resident of Washington. That is true, Your Honor. I don't deny that. But, you know, again, they have the burden on jurisdiction. If you look at the facts as a whole here, they do not meet their burden of showing diversity of citizenship. So there's no jurisdiction. I would like to just make – I'm sorry? If we were to agree with you and to remand the district court with an order to remand the Washington State Superior Court, you're back in the soup for a long time. Yes. Please don't remand. What I want you to do, to be very clear, is I want you to reverse and dismiss and dissolve. But a hold that we don't have subject matter jurisdiction, the inevitable consequence is that this is remanded to the Washington State court because it was removed. Well, they could in theory file – actually, this was not a removal, as I recall. Well, this was originally filed here. Yes, it was. I take it back. I'm sorry. I mean, in theory, I guess they could file in a state court in Washington a new case. No, this is not a removed case. I'm mistaken. All right. Let me just mention one or two quick points in my time remaining. Dr. Deshmukh left LAM, I think it was either 15 or 16 months ago. He's been under an injunction for 11 months. He testified under oath that LAM initially told him that they just didn't want him to work on this product for nine months. We're way beyond that. We need immediate relief now desperately. The other thing that's important here is when I said 16 months since he's been gone and under injunction for 11 months, simple arithmetic would suggest for five months he was working at applied and there was no injunction, including for two months, on the product at issue, this enabler. They have never amended their complaint. They have never alleged, they have never even intimated that he has used or disclosed a single trade secret. That to me is very telling on this issue of, you know, candor, good faith and the equities. I think I'm out of time. I think this was a blatant case of form shopping. We'd ask you to reverse and dismiss. Thank you very much. Thank you, counsel. Thank you both very much. It will be submitted. The court will stand in recess.
judges: Reinhardt, W. Fletcher, Bybee